Bertram Harnett, J.
Data banks keep track of us all. They record evidence of our credit worthiness, our character, and our style of living, and they report to potential employers or *663 lenders. In our complex society, data banks of personal information seem necessary evils: necessary because they quickly tell vulnerable institutions with whom they are dealing; evil because their evidence may be inaccurate and because they may brand us with the scarlet letter of lost events best forgotten. The concurrence of necessity and evil requires a firm but sensitive governmental hand to minimize abuse while maintaining utility. Congress sought this balance in passing the Federal Fair Credit Reporting Act (US Code, tit 15, § 1681 et seq.). In this case, the plaintiffs question the quality of that balance, and find it tilted against children caught up in difficulties with private business concerns.
Seventeen-year-old Joan E. McCauley was fired from her job at Alexander’s Department Store. The reason: Alexander’s learned that five years earlier, at age 12, Joan was accused of stealing merchandise from Gimbels. While Gimbels personnel apparently did not call the police or institute any juvenile proceedings against Joan, they did record an incident and report it to Stores Mutual Protective Association.
The association is a corporation owned by its subscribers, major retailers in the New York area, to whom it supplies information about individuals on request. Alexander’s asked the association about Joan’s background when they hired her, and when it got the report of the Gimbels involvement, it summarily fired her. No other reason for dismissal appears in the record.
At first, Joan complained that the information in the association report was not true, and that the defendants had defamed her and wrongfully interfered with her employment. However, at a hearing before Mr. Justice Widlitz of this court on December 11, 1974, Joan admitted the Gimbels incident. Her suit now is based on a claim of improper dissemination of truthful information. Joan’s mother’s cause of action for defamation based on the same facts must succeed or fall with her daughter’s claim.
The association moves here for summary judgment against Joan and her mother. Significantly, Joan and her mother do not allege that either Alexander’s or the association violated any of the prescriptions of the Fair Credit Reporting Act. Indeed, the facts presented indicate full compliance. But, they ask the court to consider the inappropriateness of applying to a 12-year-old child standards and procedures written for adults.
*664 The Fair Credit Reporting Act permits consumer reporting agencies like the Stores Mutual Protective Association to furnish information concerning a person’s character and reputation when requested for employment purposes. (US Code, tit 15, § 1681b.) Generally, adverse information, such as the Gimbels incident, becomes stale after seven years and can no longer be reported. (US Code, tit 15, § 1681c.) The law makes no distinction between adults and children.
Had Joan been taken into custody and processed as a juvenile delinquent after supposedly stealing from Gimbels, neither the police nor Family Court records would be available to Alexander’s or the association because of Joan’s age at the time. (Family Ct. Act, §§ 166, 784.) But, no applicable law inhibits the reports of agencies (such as the association here) in relaying employment information except as provided in the Federal Fair Credit Reporting Act. New York’s Credit Data Report Act (General Business Law, § 370 et seq.) does not apply; its protection is limited only to reports of credit worthiness. Unlike the Federal act, it does not restrict reports for employment purposes. In any event, it provides no restriction on the subject or quality of information which a credit bureau can report.
There appears to be a statutory gap here, both Federal and State. Along with the presumed facts of the incident, the association told Alexander’s that she had signed a statement confessing the theft. The court has grave doubts about the usefulness for any legitimate purpose of a confession signed by a 12-year-old girl apparently without legal or any adult counsel, who was, she claims, threatened with police action if she refused to sign. The stigma of supposed criminality attached to acts of young children can be unfairly burdensome for many years. Because of the sensitivities implicit here, the law bids the State to guard the record where it does the accusing. Yet, a laxer rule applies to a private department store staff which is not even restricted by notions of due process or public responsibility. A stream of childhood misconduct accusation and admission can freely flow through the pipeline of commercial credit and personnel reporting agencies.
The Fair Credit Reporting Act makes no attempt to restrict the kind of information made available to users beyond prohibiting the reporting of stale or "obsolete” information. (US Code, tit 15, § 1681c.) (That section prohibits disclosure of adverse information once it becomes sufficiently old. Particu *665 larly, Joan’s incident cannot be reported once seven years from its occurrence have passed. [US Code, tit 15, § 1681c, subd (a), par (6).] Even this protection would be unavailable were Joan to apply for a job paying $20,000 a year or more [US Code, tit 15, § 1681c, subd (b), par (3)].) Otherwise, any information about a person no matter how insignificant, prejudicial, or irrelevant to the user’s needs, can be reported. If, in allowing such open-ended disclosures, Congress trusted that information users would judiciously weigh the importance of each bit of data, on the record here, Alexander’s has failed that trust.
It seems that Joan had no contract or employment protection at Alexander’s and could have been fired at will. Yet her discharge should morally follow the exercise of some reasonable business judgment. Surely, an action by Alexander’s in allowing a child’s minor indiscretion to influence its decision about a young woman with an otherwise unspoiled record suggests a fundamental unfairness. Unfortunately, this seems without remedy in today’s statutory scheme.
The Fair Credit Reporting Act needs strengthening to make unduly prejudicial, questionable, or insignificant information of youthful indiscretion unavailable. But, right now, there is no law against a reporting agency passing on such information, nor against a department store’s moral abdication in using it. There is not even a statutory standard.
While technically Alexander’s has not moved for summary judgment here, this decision disposes of the case against it also. Since Joan’s report was not illegally employed, she and her mother have no colorable cause of action against Alexander’s under the existing allegations. The ghost of a case should not fill needed space in society’s crowded court calendar. A motion for summary judgment in effect searches the record, and, once unleashed, finds judicial discretion in applying it to concerned and adequately informed parties. (CPLR 3212, subd [b].)
The question of Joan’s rights against Gimbel’s in the first place for its conduct and for reporting the information is not before this court.
Accordingly, the motion for summary judgment is granted and the complaint is dismissed.
See short-form judgment signed today.